IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jeanette Luchetta, Administrator of the | : | CIVIL ACTION |
| Estate of Ralph Luchetta | : | |
| 1500 JFK Blvd, Suite 620 | : | TRIAL BY JURY DEMANDED |
| Philadelphia, PA 19102 | : | |
|      Plaintiff, | : | |
| | : | |
|      v. | : | |
| | : | |
| Schuylkill County | : | |
| 230 Sanderson St | : | |
| Pottsville, PA 17901-1758 | : | |
| | : | |
| PrimeCare Medical Inc. | : | |
| 230 Sanderson St | : | |
| Pottsville, PA 17901-1758 | : | |
| | : | |
| David Wapinsky, Warden | : | |
| 230 Sanderson St | : | |
| Pottsville, PA 17901-1758 | : | |
| | : | |
| Michael Buchanan, Deputy Warden | : | |
| 230 Sanderson St | : | |
| Pottsville, PA 17901-1758 | : | |
| | : | |
| Barron Hetherington, Chairman of the | : | |
| Prison Board | : | |
| 230 Sanderson St | : | |
| Pottsville, PA 17901-1758 | : | |
| | : | |
| Correction Officer Murton, Correction | : | |
| Officer Confer, Correction Officer Haladay, | : | |
| Correction Officer Hutnick, Correction | : | |
| Officer Miranda, Correction Officer | : | |
| Gotshall, Lieutenant Klinger, & Lieutenant | : | |
| Keppel | : | |
| 230 Sanderson St | : | |
| Pottsville, PA 17901-1758 | : | |
| | : | |
| James Lukach, Jessica Brodbst, Jamie | : | |
| Atkinson, Nicole Hollywood, Alyssa | : | |
| Hysock, Kimberly Ryan, Laurie Case, Julie | : | |

Merrigan, Varsha Pandya, Megan Hughes,   :
Brianna Culp, Carina Gross, Janelle Bohr & :
Joshua Lehman                             :
230 Sanderson St                          :
Pottsville, PA 17901-1758                 :
                    Defendants.           :
_____   :

## **COMPLAINT**

Plaintiff, Jeanette Luchetta, Administrator of the Estate of Ralph Michael Luchetta by and through her attorney Brian Zeiger, Esq., hereby alleges the following:

### **JURISDICTION & VENUE**

1.     Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2.     Defendant PrimeCare is a resident of the Eastern District of Pennsylvania and a portion of the underlying action occurred in the Eastern District of Pennsylvania, accordingly venue is proper pursuant to 28 U.S.C. § 1391(c)(2) and (d).

### **PARTIES**

3.     Plaintiff Jeanette Luchetta is the Administrator of the Estate of Ralph Michael Luchetta with a mailing address of 1500 JFK Blvd, Suite 620, Philadelphia, PA 19102.

4.     Defendant Prime Care Medical Inc. is a private subcontractor of Defendant Schuylkill County, who was contracted to provide medical care to inmates at the Schuylkill County Prison, located at 230 Sanderson Street, Pottsville, PA 17901.

5.     Defendant Schuylkill County owns, operates, controls and promulgates policies governing the Schuylkill County Prison, located at 230 Sanderson Street, Pottsville, PA 17901

6.     Defendants David Wapinsky, Michael Buchanan, Barron Hetherington, and Varsha Pandya, were the decision makers for policy at the Schuylkill County at all times relevant to the instant action, including but not limited to medical care to inmates, medical subcontracting and medical budgets related to the subcontracting to PrimeCare, Inc., conducting business at 230 Sanderson Street, Pottsville, PA 17901, and are sued in both their individual and official capacities.

7.     Defendants James Lukach, Jessica Brodbst, Jamie Atkinson, Nicole Hollywood, Alyssa Hysock, Kimberly Ryan, Laurie Case, Julie Merrigan, Varsha Pandya, Megan Hughes, Brianna Culp, Carina Gross, Janelle Bohr & Joshua Lehman, who at all relevant times, were employed by PrimeCare Inc., at the Schuylkill County Correctional Facility as health care providers, conducting business at 230 Sanderson Street, Pottsville, PA 17901. All of the Defendants' actions or inactions were taken under color of state law.  The Defendants are sued in their individual capacity.

8.     Defendants Correction Officers Murton, Confer, Haladay, Hutnick, Miranda, Gotshall, Lieutenant Klinger, and Lieutenant Keppel are adult individuals, who at all relevant times, were employed by Schuylkill County Prison. All of Defendants actions or inactions were taken under color of state law.  The defendants are sued in their individual capacity.

**FACTUAL BACKGROUND**

9.     Plaintiff re-alleges each and every averment as set forth previously, as if the same were set forth here in full.

10.

11.     On or about November 23, 2022, Plaintiff's Decedent, Ralph Michael Luchetta killed himself while being detained in the Schuylkill County Prison.

12.     Mr. Luchetta had a years-long documented history of suicide attempts while in custody at various prisons, including but not limited to Schuylkill County.

13.     Further, the individual medical defendants never drew up an overall mental health treatment plan for Mr. Luchetta; instead, they treated him day by day, preventing him from getting real, continuous, and meaningful mental health care.

***Facts Specific to Decedent in Regard to Individual Medical Provider Named Defendants***

14.     Immediately upon intake to Schuylkill County Prison (hereafter "SCP") on May 31, 2022, Mr. Luchetta disclosed to Defendant Joshua Lehman that he tried to commit suicide by hanging.

15.     However, Mr. Luchetta claimed at that time that he did not have active suicidal ideation.

16.     On June 1, 2022, Mr. Luchetta was again interviewed about his psychiatric history by Defendant Alyssa Hysock where he disclosed that he tried to commit suicide on multiple occasions.

17.     During that June 1, 2022, interview Mr. Luchetta named his state provided psychiatrist employed at SCI Frackville, Dr. Greenfield.

18.     Also, on June 1, 2022, Defendant Brianna Culp was involved in Mr. Luchetta's intake and taking his vitals.

19.     On June 8, 2022, Defendant Brianna Culp received a sick call slip from Mr. Luchetta and entered the sick call slip into the SCP computer system.

20.     Defendant Hysock noted a prior suicide attempt by hanging at SCI Camp Hill.

21.     No personnel at SCP made attempts to retrieve Mr. Luchetta's recent psychiatric history from any state correctional institution.

22.     Defendant Hysock assigned Mr. Luchetta to the general population hold 3 at SCP choosing not to place him in Suicidal Segregation.

23.     Based on information and belief, suicidal segregation is a more expensive location in which to house inmates at SCP.

24.     On July 7, 2022 Defendant Julie Merrigan, MHS, revised Mr. Luchetta's custody status with respect to his suicidal ideations.

25.     Upon information and belief, Defendant Merrigan revised Mr. Luchetta's custody status due to his erratic behavior and noncompliance with medication.

26.     On July 7, 2022, Defendant Merrigan recorded that Mr. Luchetta had prior suicide attempts by multiple methods: hanging and firearm.

27.     On July 11, 2022, Defendant Jessica M. Brobst again took Mr. Luchetta's vital signs. However, she denied him any medical help or treatment related to his mental health issues.

28.     On July 22, 2022, Defendant Jamie Atkinson, LPC, administered an additional Mental Health Status Exam for unspecified reasons.

29.     On July 26, 2022, Defendant Megan Hughes took Mr. Luchetta's vital signs, entered them into the SCP computer system, received a sick call slip, and entered them into the SCP computer system. However, she denied him any medical help or treatment related to his mental health issues.

30.     On August 3, 2022, Defendant Joshua Lehman took Mr. Luchetta's vital signs and denied him any medical help or treatment related to his mental health issues.

31.     On August 27, 2022, Defendant Jessica Brobst, saw Mr. Luchetta, made a blank entry into the SCP computer system, and denied him any medical help or treatment related to his mental health issues.

32.     On August 29, 2022, Defendant Nicole Hollywood entered Mr. Luchetta's vital signs into the SCP computer system and denied him any medical help or treatment related to his mental health issues.

33.     Mr. Luchetta was next seen by a health professional at SCP on September 7, 2022, by Defendants Atkinson and Culp.

34.     Defendant Atkinson noted Mr. Luchetta was often unclothed and unkempt in his cell, had erratic behaviors, and was in active psychosis.

35.     Defendant Culp entered Mr. Luchetta's vital signs in the SCP computer system, entered a sick call slip in the SCP computer system, and denied him mental health care.

36.     Defendant Atkinson recorded that Mr. Luchetta has been placed on Level II Suicide Watch due to behaviors on the unit, but did not ever specify what those behaviors are.

37.     Mr. Luchetta repeatedly told Defendant Atkinson that he needed to be seen by a hospital for broken bones.

38.     Nonetheless, Defendant Atkinson recorded that Mr. Luchetta was a "low Suicide Risk."

39.     Defendant Atkinson examined Mr. Luchetta again on September 21, 2022, because he was referred by unspecified persons for concern of possible suicide risk.

40.     Also on September 21, 2022, Defendant Kimberly Ryan entered Mr. Luchetta's vital signs in the SCP computer system and denied him mental health care.

41.     Defendant Atkinson concluded that Mr. Luchetta had passive suicidal ideation and did not need to be hospitalized.

42.     After his examination, Defendant Atkinson ordered that Mr. Luchetta be placed at a lower level of observation for Suicide Watch.

43.     On September 28, 2022, Defendant Atkinson discontinued the suicide watch protocols and sent Mr. Luchetta to the general population.

44.     On September 30, 2022, Mr. Luchetta was once again seen by Defendant Atkinson for suicidal ideations and actions.

45.     Mr. Luchetta sawed at his wrists with a plastic spoon, leaving notable marks on his wrists.

46.     Mr. Luchetta told Defendant Atkinson that he had both suicidal and homicidal ideations.

47.     Defendant Atkinson noted that Mr. Luchetta's likelihood of self-harm and suicide risk was high and that he should be referred to psychiatry.

48.     Mr. Luchetta was not hospitalized at that time, and no steps taken by the medical team other than a daily follow-up.

49.     Mr. Luchetta was placed in segregation at that time.

50.     On October 01, 2022, Defendant Janelle Bohr recorded that Mr. Luchetta self-harmed in his cell and took his vital signs.

51.     Mr. Luchetta was placed on suicide watch, which was at least the fifth time since the beginning of his incarceration.

52.     Defendant Atkinson conducted the next suicide risk assessment for Mr. Luchetta on October 3, 2022, so that the facility could end the 15-minute Suicide Watch Checks.

53.     Defendant Atkinson incorrectly recorded on October 3, 2022, that the last time Mr. Luchetta did anything or prepared to do anything to end his life happened over a year ago.

54.     Despite these two recent attempts at self-harm and the multiple attempts described on earlier dates, Defendant Atkinson only noted a single suicide attempt by hanging two years earlier during the October 3, 2022 evaluation.

55.     On October 10, 2022, Defendant Nicole Hollywood took Mr. Luchetta's vital signs and again did not provide any mental health care to him.

56.     On October 17, 2022, Defendant Atkinson again evaluated Mr. Luchetta for suicide protocols.

57.     On October 21, 2022, Defendant Carina Gross, look Mr. Luchetta's vitals, entered them into the computer system at SCP, and denied him mental treatment.

58.     On October 22, 2022, Defendant Atkinson again recorded that Mr. Luchetta had suicidal ideations and planned to implement them.

59.     On October 24, 2022, Mr. Luchetta was again placed on heightened suicide protocols because he reported that if he had other prison-issued clothes, he would hang himself.

60.     Mr. Luchetta told Defendant Atkinson if he got the right clothes, he would hang them up and kill himself.

61.     On November 1, 2022, Defendant Atkinson recorded that Mr. Luchetta had a high suicide risk.

62.    Also on November 1, 2022, Defendant Hysock took Mr. Luchetta's vital signs, entered them into the computer system at the SCP, and again denied Mr. Luchetta mental health care.

63.    Defendant Atkinson completed another Suicide Risk Assessment for Plaintiff on November 3, 2022.

64.    Mr. Luchetta articulated at that time he would hang himself if given the right clothes to do so.

65.    On November 2, 2022, Defendant Gross took Mr. Luchetta's vital signs, entered them into the computer system at the SCP, and again denied Mr. Luchetta mental health care.

66.    Mr. Luchetta told the Behavior Health staff at SCCP that he will hang himself if given the opportunity again on November 4, 2022.

67.    On November 9, 2022, Defendant Kimbery Ryan examined Mr. Luchetta and did not give him any medical care.

68.    On November 10, 2022, Defendant Megan Hughes, examined Mr. Luchetta, entered a sick call slip into the SCP computer system, took his vital signs, and failed to give him any mental health treatment.

69.    On November 11, 2022, Defendant Atkinson again ordered increased supervision of Mr. Luchetta for risk of suicide.

70.    On November 15, 2022, Defendant Ryan took Mr. Luchetta's vital signs, entered them into the computer system at the SCP, and again denied Mr. Luchetta mental health care.

71.    On November 21, 2022, Defendant Gross took Mr. Luchetta's vital signs, entered them into the computer system at the SCP, and again denied Mr. Luchetta mental health care.

72.    On November 22, 2022, Mr. Luchetta was found unconscious and non-responsive in his cell next to the toilet.

73.    Based upon information and belief, Mr. Luchetta swallowed a hairbrush and Styrofoam, which caused him to go into cardiac arrest, and subsequently die.

74.    From the time of his admittance to Cedar Crest Hospital in Allentown to his death, Mr. Luchetta never regained consciousness.

75.    On or about November 23, 2022, Mr. Luchetta was pronounced dead.

76.    Oddly, on Mr. Luchetta's medical chart on November 23, 2022, Defendants Lukach and Hollywood mad entries even though Mr. Luchetta was no longer physically at the SCP.

77.    Based upon information and belief, inexplicably Mr. Luchetta's corpse had bumps and bruises on his head; further, Mr. Luchetta's corpse had a much larger amount of fluid and/or water than normal.

78.    As a direct and proximate cause of Defendants' actions, Mr. Luchetta suffered immense physical injuries and death.

79.    Moreover, Mr. Luchetta's family suffered mental anguish and a loss of companionship, comfort, financial support and guidance.

80.    Further, the actions and inactions of the Defendants Lehman, Hysock, Atkinson, Pandya, and Case did not meet the standard of care for medical professionals in the United States when treating mentally ill patients.

81.    The inactions of all of the medical provider defendants created a system of cost savings and passing the buck instead of treating Mr. Luchetta, which ultimately led to his untimely death.

***Facts Specific to Decedent in Regard to Individual Corrections Staff Named Defendants***

82.  On or about November 22, 2022, various corrections staff had limited cursory interactions with Mr. Luchetta, yet he was still able to kill himself by injuring a hairbrush and Styrofoam.

83.  The timeline of the above-mentioned limited cursory interactions on or about November 22, 2022 is as follows:

    a.  13:50 Defendant Murton

    b.  13:57 Defendant Confer

    c.  1411 Defendants Murton and Confer

    d.  1414 Defendant Murton

    e.  1425 Defendant Confer

    f.  1449 Defendant Confer

    g.  1509 Defendant Haladay

    h.  1519 Defendant Hutnick made a quick glance at Mr. Luchetta's by his cell door

    i.  1529 Defendant Haladay, Klinger, and Keppel

    j.  1533 Defendant Hutnick

    k.  1541 and 1543 Defendant Miranda made a quick glance at Mr. Luchetta's by his cell door

    l.  1545 Defendant Hutnick

    m.  1552 Defendant Haladay found Mr. Luchetta after his suicide attempt.

84.    On or about November 22, 2022, Defendant Haladay was responsible for monitoring inmates on his assigned block and was on desk duty as the supervisor. He found Mr. Luchetta unresponsive, sitting up by a toilet in his cell.

85.    Further, based upon information and belief, Defendants Keppel and Klinger were on duty and personally involved in the supervision of corrections officers in the cell area of Mr. Luchetta at the time he attempted suicide.

86.    None of the defendant corrections officers above did anything to prevent Mr. Luchetta from taking his life on the day in question.

***Facts Specific to Supervisory, Vicarious, and Training Liability regarding the Defendant the Schuylkill County Prison***

87.    Defendants Schuylkill and PrimeCare knew or should have known of the institutional deficiencies in the care and services they provided to the inmates in the Schuylkill County Prison, for which they were charged with their care.

88.    Specifically, there was an instituted policy at the time of Mr. Luchetta's detention at Schuylkill County Prison of cost-cutting measures and inadequate care for inmates with extreme mental health needs.

89.    More specifically, Defendants Pandya, Wapinsky, Buchanan, and Hetherington were personally responsible for implementing policies and procedures at the Schuylkill County Prison at the time Mr. Luchetta was an inmate.

90.    Defendants Wapinsky, Buchanan, and Hetherington oversaw all prison operations and were responsible for hiring and firing all employees of the Schuylkill County Prison.

91.    Defendants Wapinsky, Buchanan, and Hetherington had the authority to enact and enforce corrections policy at the Schuylkill County Prison.

92.    Defendants Pandya, Wapinsky, Buchanan, and Hetherington implemented the policy of not having a full-time psychologist or psychiatrist on staff at the Schuylkill County Prison.

93.    Defendants Wapinsky, Buchanan, and Hetherington decided to subcontract medical care to inmates at the SCP to PrimeCare, and determined the budget for PrimeCare.

94.    Defendant Pandya had the authority to enact and enforce medical policy at the Schuylkill County Prison.

95.    Further, based on information and belief, PrimeCare was paid a "flat fee" for care to inmates at the SCP, thereby incentivizing PrimeCare to provide the least amount of care to inmates at the SCP.

96.    According to the Bureau of Justice Statistics, suicide has been the second leading cause of death in local prisons since 2000, behind illness.

97.    Schuylkill County Prison has a history of inmates dying at the prison:

a.   On or about November 20, 2019, Jerry Joseph Feathers, hung himself with a towel or bed sheet in his cell, and later died from related injuries. *See https://www.republicanherald.com/news/police-coroner-investigating-death-of-inmate-at-schuylkill-county-prison/article_830710f8-4597-50a7-924d-a6357681e3be.html*

b.   On or about June 20, 2020, Vincent Davalos, ingested narcotics, was denied medical care at intake to cope with withdrawal, and eventually died from an overdose. *See https://www.wnep.com/article/news/local/schuylkill-*

county/schuylkill-county-prison-lawsuit-overdose-death-vincent-davalos/523-738d2033-b7f5-4d04-a05a-9ccc75101356

c.   On or about November 12, 2019, Jonathan Merced died from a heart illness for which he was denied care. *https://www.pennlive.com/news/2021/12/lack-of-medical-care-led-to-death-of-19-year-old-in-pa-jail-mom-says-in-lawsuit.html*

d.   On January 7, 2020, Stacey Redclift died from suicide, even though guards and medical staff were all made aware of her suicidal ideations. *See Reclift v. Schuylkill County*, 21-cv-1866 (M.D. Pa. 2021).

e.   On or about March 31, 2013, Matthew Koncsler died from a drug overdose related to contraband entering the prison.

*https://www.corrections1.com/corrections/articles/mother-of-inmate-who-died-in-pa-county-prison-sues-PUjhYuEczLDpnuVZ/*

98.    Continually, in the deaths cited in the preceding paragraph, Schuylkill County Prison has historically failed to properly train, hire, and supervise correctional officers, correctional supervisors, mental health professionals, mental health doctors, and mental health nurses.

99.    Continually, in the deaths cited, the employees of Defendant Schuylkill County Prison have not followed the rules promulgated by Defendant Schuylkill County Prison regarding the monitoring of inmates suffering from behavioral health disorders who are suicidal.

100.   Continually, in the deaths cited, Defendant Schuylkill County Prison does not have proper policies and practices in place to ensure staff members communicate suicidal risk to each other among different units.

101.   Continually, in the deaths cited, Defendant PrimeCare has not provided proper medical care to inmates due to cost-saving techniques that routinely deprive inmates of needed medical care.

## COUNT I:
## FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
## FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983
## PLAINTIFF V. ALL DEFENDANTS

102.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

103.   Mr. Luchetta had a known history of severe mental illness and a history of attempted suicide.

104.   Mr. Luchetta cooperated with corrections officers and health care providers regarding treatment of his mental health and treatment.

105.   Mr. Luchetta entered the Correctional Facility in an obviously fragile condition considering the severity due to his extreme mental health condition.

106.   Despite showing signs of continued behavioral health concerns, Mr. Luchetta was discharged from suicide watch while under the care and supervision of Defendant Schuylkill County.

107.   Defendants acted deliberately, recklessly, and with a conscious disregard of the obvious risk that Mr. Luchetta would commit suicide.

108.   Defendants' actions caused Mr. Luchetta to needlessly suffer, served no penological purpose, and caused him to commit suicide to end his mental anguish.

109.   As a direct and proximate cause of Defendants' actions, Mr. Luchetta suffered emotional injury, immense physical pain, humiliation, fear, physical injuries, and death.

WHEREFORE, Plaintiff claims of Defendant Schuylkill County a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

**COUNT II:**
**SUPERVISOR LIABILITY –**
**FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF V. DEFENDANT SCHUYLKILL COUNTY, DEFENDANT PRIMECARE,**
**DEFENDANTS PANDYA, WAPINSKY, BUCHANAN, AND HETHERINGTON**

110.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

111.   Defendants were deliberately indifferent to the needs of mentally ill persons who were under their supervision at the Correctional Facility.

112.   Upon information and belief, Defendants were aware that certain policies and customs posed a grave danger to behavioral health patients detained in Correctional Facility, including Mr. Luchetta.

113.   Defendants maintained a policy of inadequately staffing the facility with proper staff to address inmates with severe mental illnesses.

114.   In spite of such knowledge, Defendants did nothing to implement corrective policy or correct custom which Defendants knew posed a serious danger to inmates and pre-trial detainees, including Mr. Luchetta.

115.   Defendants are deliberately indifferent to the well-being of the behavioral health patients detained in the Correctional Facility, including Mr. Luchetta.

116.   Defendants knew of their supervisory failures and knew that mentally ill detainees were not receiving adequate treatment, but deliberately failed to correct the problem.

117.  Defendants were aware of a substantial risk that mentally ill detainees would harm themselves or commit suicide because of inadequate care.

118.  Defendants were deliberately indifferent to the to the needs of mentally ill persons, specifically those with a history of substance abuse, who were detained at Correctional Facility under their supervision.

119.  Defendants were deliberately indifferent to the consequences of their established policies and customs.

120.  Defendants establishment and maintenance of the above-mentioned policies and customs directly caused Mr. Luchetta to be deprived of her Constitutional rights.

121.  As a direct and proximate result of Defendants deliberate indifference, Mr. Luchetta suffered immense physical pain, humiliation, fear, physical injuries and death. Moreover, Mr. Luchetta's family suffered mental anguish and a loss of companionship, comfort, financial support and guidance.

122.  Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which she has no present knowledge.

WHEREFORE, Plaintiff, claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

### COUNT III:
### MUNICIPAL LIABILITY
### FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF V. DEFENDANT SCHUYLKILL COUNTY and DEFENDANT
### PRIMECARE,

123.  Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at length.

124.   Defendants promulgated and maintained policies and customs, as pled at length above, which were the moving force that caused Mr. Luchetta's constitutional and statutory rights being violated.

125.   Defendants failed to adhere to protocol in detecting and safeguarding inmates suspected of contemplating suicide, including segregation in a separate cell and increased monitoring.

126.   Defendants maintained a policy of staffing the facility without proper medical professionals to treat mentally ill inmates with a particular vulnerability to suicide.

127.   Defendants maintained a custom among corrections officers and behavioral health care providers of not sharing information about inmate and detainee's behavioral health status, symptoms, history, and warning signs.

128.   Defendants maintained a custom among behavioral health care providers to only look back at the most recent health care record.

129.   All of the pled policies and customs were implemented before, during, and after Mr. Luchetta's detention at the Correctional Facility.

130.   Defendants knew of the dangers posed by these policies and customs.

131.   Specifically, Defendants were fully aware prior to the decedent's incarceration of the extreme danger posed by housing seriously mentally ill inmates and detainees, with a history of prior suicide attempts, in a housing unit where detainees would be able to access instruments capable of aiding in suicide by hanging.

132.   Defendants knew of prior deaths at the prison as cited *supra*, yet no corrective actions

were taken.

133.  Had Defendants, properly promulgated appropriate protocol, appropriate custom or adequately trained and/or supervised the individual defendants, Mr. Luchetta would have received appropriate care and supervision.

134.  Defendants were deliberately indifferent to the constitutional rights of Mr. Luchetta.

135.  Defendants policies and customs were a direct and proximate cause of Plaintiff's injuries and damages.

136.  As a direct and proximate result of Defendants policies and customs, Mr. Luchetta suffered immense physical pain, humiliation, fear, physical injuries and death. Moreover, Mr. Luchetta's family suffered mental anguish and a loss of companionship, comfort, financial support and guidance.

137.  Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which she has no present knowledge.

WHEREFORE, Plaintiffs claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT IV:
## WRONGFUL DEATH (PENNSYLVANIA LAW)
## PLAINTIFF V. ALL DEFENDANTS

138.  Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

139.  Plaintiff, Jeanette Luchetta, individually and as Administrator of the Estate of Ralph Luchetta, deceased brings the action on behalf of the beneficiaries under and by virtue of the

Wrongful Death Act, 42 Pa.C.S.A. § 8301, and the Applica table Rules of Civil Procedure.

140.   Ralph Luchetta left surviving him, his parents, who are beneficiaries under the Wrongful Death Act.

141.   As a result of the conduct of Defendants, as set forth herein, Ralph Luchetta, deceased, was caused grave injuries and death, resulting in the entitlement to damages by the beneficiaries under the wrongful Death Act.

142.   Plaintiff Jeanette Luchetta, individually and as Administratrix of the Estate of Ralph Luchetta, deceased, claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing Ralph Luchetta's death.

143.   On behalf of the Wrongful Death Act beneficiaries, the Administratrix claims damages for services provided of which could have been expected to have been performed in the future.

144.   On behalf of the Wrongful Death Act Beneficiaries, the Administratrix claims damages for all pecuniary loss suffered by the beneficiaries.

145.   On behalf of the Wrongful Death Act beneficiaries, the Administratrix claims damages for all loss of comfort, society, guidance, and tutelage that the beneficiaries may have received from the decedent by the beneficiaries as a result of decedent's untimely death.

146.   On behalf of the Wrongful Death beneficiaries, the Administratrix claims damages for the full measure of damages, including punitive damages, allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000)

and in excess of local arbitration limits, exclusive of interests and costs.

## COUNT V:
## SURVIVAL ACTION (PENNSYLVANIA LAW) –
## PLAINTIFF V. ALL DEFENDANTS

147.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

148.   Plaintiff Jeanette Luchetta, individually and as Administratrix of the Estate of Ralph Luchetta, deceased, brings this Survival Action on behalf of the Estate of Ralph Luchetta, deceased, brings this Survival Action on behalf of the Estate of Ralph Luchetta under and by virtue of 42 Pa.C.S. §8302, and the applicable Rules of Civil Procedure and the decisional law interpreting the Act.

149.   As a result of the negligence of all Defendants set forth herein, Ralph Luchetta, was caused grave injuries and death, resulting in the entitlement to damages by his Estate under the Survival Act.

150.   As a result of the death of Ralph Luchetta, her Estate has been deprived of the economic value of her life expectancy, and Plaintiff claims under the Survival Act, damages for all pecuniary losses suffered by the Estate as a result of her decedent's death, including all loss of income, earnings, retirement income, benefits and Social Security income.

151.   The Administratrix further claims, under the Survival Act, the total amount that the decedent would have earned in the future, minus the costs of personal maintenance.

152.   The Administratrix further claims, under the Survival Act, damages for the conscious pain and suffering endured by decedent prior to death, including physical pain and suffering, and mental pain and suffering leading to decedent's death.

153.   The Administratrix further claims, under the Survival Act all damages, including punitive damages, recoverable pursuant to 42 Pa.C.S. § 8302, and the decisional law interpreting said Act.

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000), and in excess of local arbitration limits, exclusive of interests and costs.

## COUNT VI:
## MEDICAL NEGLIGENCE (PENNSYLVANIA LAW) –
## PLAINTIFF V. DEFENDANT PRIMECARE, DEFENDANTS LEHMAN, HYSOCK, ATKINSON, PANDYA, AND CASE

154.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

155.   The negligent conduct of the individual defendants, Lehman, Hysock, Atkinson, Pandya, and Case, in the course and scope of their employment with the Defendant SCP and/or PrimeCare, Inc., consists of the following:

   a.   negligently and recklessly failing to properly communicate and review treatment records to ensure that mental health providers are fully abreast of signs and symptoms of suicide risk;

   b.   negligently and recklessly failing to properly administer necessary medication to prevent Mr. Luchetta from inflicting self-harm;

   c.   negligently and recklessly failing to properly maintain and properly monitor records in order to discover non-compliance with necessary medication.

   d.   negligently and recklessly discharging Mr. Luchetta from suicide watch;

   e.   negligently and recklessly allowing Mr. Luchetta access to a hairbrush and

Styrofoam used to commit suicide;

f.  negligently and recklessly failing to communicate to superiors and peers Mr. Luchetta's previous suicide attempt and the severity of Mr. Luchetta's mental health illness;

g.  negligently and recklessly failing to provide appropriate supervision to Mr. Luchetta; and

h.  negligently and recklessly not monitoring Plaintiff while in their care.

i.  Failing to meet the standard of care for mental health patients in United States.

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000), and in excess of local arbitration limits, exclusive of interests and costs.

### COUNT VII:
### GENERAL NEGLIGENCE (PENNSYLVANIA LAW) –
### PLAINTIFF V. DEFENDANT PRIMECARE, DEFENDANTS JAMES LUKACH, JESSICA BRODBST, JAMIE ATKINSON, NICOLE HOLLYWOOD, ALYSSA HYSOCK, KIMBERLY RYAN, LAURIE CASE, JULIE MERRIGAN, VARSHA PANDYA, MEGAN HUGHES, BRIANNA CULP, CARINA GROSS, JANELLE BOHR, JOSHUA LEHMAN & KENDLE JEMIOLA

156.  Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

157.  The generally negligent conduct of the individual defendants, in the course and scope of their employment with the Defendant SCP and/or PrimeCare, consists of the following:

a.  Properly monitoring the decedent

b.  Dispersing medication to the decedent

c.  Ensuring that the decedent did not have access to instruments that would have

enabled him to kill himself

    d.   negligently and recklessly discharging Mr. Luchetta from suicide watch;

WHEREFORE, Plaintiff demands damages, including punitive damages, against

Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars

($150,000), and in excess of local arbitration limits, exclusive of interests and costs.

### COUNT VIII:
### NEGLIGENCE – VICARIOUS LIABILITY (PENNSYLVANIA LAW)
### PLAINTIFF V. DEFENDANT PRIMECARE

158.  Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at length

159.  The negligence of Defendant PrimeCare, by and through their agents, servants, and/or

employees, within the course and scope of their agency and employment consists of the

following:

    a.   negligently and recklessly failing to properly communicate and review treatment records to ensure that mental health providers are fully abreast of signs and symptoms of suicide risk;

    b.   negligently and recklessly failing to properly administer necessary medication to prevent Mr. Luchetta from inflicting self-harm;

    c.   negligently and recklessly failing to properly maintain and properly monitor records in order to discover non-compliance with necessary medication.

    d.   negligently and recklessly discharging Mr. Luchetta from suicide watch;

    e.   negligently and recklessly allowing Mr. Luchetta access to instruments he could

swallow to kill himself;

    f.   negligently and recklessly failing to communicate to superiors and peers Mr. Luchetta's previous suicide attempt and the severity of Mr. Luchetta's mental health illness;

    g.   negligently and recklessly failing to provide appropriate supervision to Mr. Luchetta; and

    h.   negligently and recklessly not monitoring Plaintiff while in their care.

    i.   Failing to meet the standard of care for mental health patients in United States.

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000), and in excess of local arbitration limits, exclusive of interests and costs.

## <u>COUNT IX:</u>
## <u>NEGLIGENT HIRING, RETENTION, AND SUPERVISION (PENNSYLVANIA LAW) – PLAINTIFF V. DEFENDANT CORRECT CARE SOLUTIONS</u>

160.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

161.   The negligence of Defendant Schuylkill County in the hiring, retention, and supervision of employees and or agents consists of the following:

    a.   employing and retaining employees who were not competent in responding to inmates' threats to harm themselves;

    b.   employing and retaining employees who were not competent in communicating with inmates who are mentally ill and/or had threatened to harm themselves;

    c.   employing and retaining employees who were not competent in responding to

inmates not responding in their cells.

d.   employing and retaining employees who were not competent in reporting

compliance and noncompliance with medical treatment.

e.   employing and retaining employees who were not competent to in performing

rounds and surveillance of inmates;

f.   failing to properly train employees in responding to inmates' threats to harm

themselves;

g.   failing to properly train employees in communicating with inmates who are

mentally ill and/or had threatened to harm themselves;

h.   failing to properly train employees to learn from the mental health providers when

an inmate had previously been housed in the medical wing because the inmate

had threatened to harm and/or kill themselves.

i.   Failing to properly train its employees to meet the standard of care for mental

health patients in United States.

WHEREFORE, Plaintiff demands damages, including punitive damages, against

Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars

($150,000), and in excess of local arbitration limits, exclusive of interests and costs.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

August 21, 24                          __/s/Brian Zeiger_____

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PA 19102
215.546.0340

DATE        BRIAN ZEIGER
           IDENTIFICATION NO.: 87063
           LEVIN & ZEIGER, LLP
           TWO PENN CENTER
           1500 JFK BLVD STE 620
           PHILADELPHIA, PA 19102
           215.825.5183
           zeiger@levinzeiger.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jeanette Luchetta, Administrator of the | : | CIVIL ACTION |
| Estate of Ralph Luchetta | : | |
| Plaintiff, | : | TRIAL BY JURY DEMANDED |
| | : | |
| v. | : | |
| | : | |
| Schuylkill County, et al. | | |
| Defendants. | | |

**CERTIFICATE OF MERIT AS TO DEFENDANTS
PRIMECARE and INDIVIDUAL DEFENDANTS LEHMAN, HYSOCK, ATKINSON,
PANDYA, AND CASE**

I, Brian J. Zeiger, Esquire, certify that:

An appropriate licensed professional has supplied a written statement under Rule 1042.3

to the undersigned stating that there is a basis to conclude that the care, skill or knowledge

exercised or exhibited by PrimeCare and their agent(s) and employee(s), specifically defendants

Lehman, Hysock, Atkinson, Pandya, and Case, and all individual medical provider defendants in

the treatment that is the subject of the Complaint, fell outside acceptable professional standards

and that such was a cause in bringing about the harm.

RESPECTFULLY SUBMITTED,

August 21, 2024                            /s/Brian Zeiger
DATE                                       BRIAN J. ZEIGER, ESQUIRE
                                           IDENTIFICATION NO.: 87063
                                           LEVIN & ZEIGER, LLP
                                           TWO PENN CENTER
                                           1500 JFK BLVD STE 620
                                           PHILADELPHIA, PA 19102
                                           215.546.0340
                                           zeiger@levinzeiger.com